# Ben Avon Borough et al., Appellants, *v.* Ohio Valley Water Co.

*Public service companies—Rates—Confiscation—Due process of law—Constitutional law.*

1. Due process of law requires that some judicial tribunal, upon its own independent judgment as to both law and facts, shall determine whether or not rates, which the public service commission allows a utility company to charge, are confiscatory.

2. Confiscation necessarily results if a utility company is prevented from receiving a proper return upon its assets devoted to and used for public purposes.

*Appeals—Superior Court—Public service companies—Rates Act —Principle of appeals in equity.*

3. On an appeal from an order of the Public Service Commission, the Superior Court is the judicial tribunal, charged by the Public Service Company Law with determining, in the first instance, the reasonableness of the rates allowed.

4. From the determination of the Superior Court in such cases, the Supreme Court, on appeal thereto, acts solely as an appellate court, and considers only alleged errors of law appearing of record and assigned as error, exactly as in other cases of appeal thereto.

5. Such appeals are to be considered and determined on the same principle as appeals in equity.

6. In all appealed cases, unless it is provided otherwise by statute, only alleged errors of law are considered by the Supreme Court.

7. If there is substantial evidence to sustain a fact alleged to have been erroneously found, the finding must be sustained; but if there is not such evidence it must be reversed, for, in that event, it was an error of law to have found it.

8. This is so even where the finding depends on the testimony of witnesses whom the court did not see.

*Public service companies—Rates—Value of property — Going-concern—Brokerage — Appeals to Superior Court — Discretion — Abuse.*

9. In determining the value of the property of a utility company, for the purpose of fixing its rates, a reasonable allowance should be made for interest on the sums paid by it in the building of its plant, from the date of their payment to the time the plant becomes operative.

10. So also the plant should be valued as a going-concern, and not merely as a constructed but idle plant.

11. So also property which is used and useful should be valued and allowed in full, if it is a reasonable improvement, considering the use to which it is now and in the near future will be put; the fact that it is not presently used to its full capacity does not alter this requirement.

12. A reasonable brokerage, paid in marketing the bonds of a utility company, for the purpose of obtaining money to construct its plant, should be allowed as a principal item, in determining the value of its property.

13. On this last point, the opinion in Ben Avon Borough et al. v. Ohio Valley Water Company, 260 Pa. 289, is overruled.

14. Unless it has been abused, the Supreme Court will not reverse the exercise of discretion given by the Public Service Company Law to the Superior Court, in determining appeals from the commission, to either reverse the commission or to remit the record to it for further proceedings.

15. If upon the findings of the Superior Court, the rates under consideration are reasonable, it is not an abuse of discretion to reverse the commission and dismiss the complaints.

Argued May 24, 1921. Appeals, Nos. 90 and 91, Oct. T., 1921, by Ben Avon Borough et al., from order of Superior Court, April T., 1917, No. 186, reversing decision of the Public Service Commission (Complaints Nos. 335, 415, 416, 417, 496, 1915), in case of Ben Avon Borough, McKees Rocks Borough, Bellevue Borough, Avalon Borough, Stowe Township, Westview Borough and William B. Dawson, and the Public Service Commission, v. Ohio Valley Water Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Affirmed.

Appeal from Superior Court. See 75 Pa. Superior Ct. 290.

The opinion of the Supreme Court states the facts.

The Superior Court reversed the order of the Public Service Commission. Ben Avon Borough with the other complainants, and the Public Service Commission, appealed.

*Error assigned,* among others, was judgment, quoting it.

*Leonard K. Guiler,* with him *David L. Starr* and *Albert G. Liddell,* for appellants.—An order of the commission should be declared void on constitutional grounds only when it clearly violates the Constitution: Knoxville v. Water Co., 212 U. S. 1; Simpson v. Shepard, 230 U. S. 352.

The order of the commission was prima facie evidence of the reasonableness thereof and the presumption would exist independently of statute: Darnell v. Edwards, 244 U. S. 564.

*Frank M. Hunter,* with him *John Fox Weiss,* for Public Service Commission.—A more definite statement that it is not necessary to fix a separate value on going con-

cern cannot be found than in our own leading case on the subject: Turtle Creek Boro. v. Water Co., 243 Pa. 401.

The Supreme Court must exercise the same scope of review as was exercised by the Superior Court: Spear v. Jamieson, 2 S. & R. 530; Halsell v. Renfrew, 202 U. S. 287; Rhodes v. U. S. Nat. Bank, 66 Fed. 512.

While it is within the power of a court of equity to decree that rates established by a commission are unreasonable and unjust, and to restrain their enforcement, it is not within its power to establish rates itself: Reagan v. Farmers L. & T. Co., 154 U. S. 362; Chicago & G. T. Ry. v. Wellman, 143 U. S. 339; Santa Ann Water Co. v. Town of San Buenaventure, 65 Fed. 323; Interstate Commerce Com. v. R. R., 215 U. S. 452; Interstate Commerce Com. v. R. R., 222 U. S. 541; Atchison, Topeka & Sante Fe R. R. v. United States, 232 U. S. 199.

*William Watson Smith,* with him *George B. Gordon, John G. Buchanan* and *Frank B. Ingersoll,* for appellee. —The findings of the Superior Court are conclusive: Prentis v. Atlantic Coast Line, 211 U. S. 210; Penna. R. R. v. Phila. Co., 220 Pa. 100; Com. v. Ry., 188 Pa. 205; Groesbeck v. Ry., 250 U. S. 607; Turtle Creek Boro. v. Water Co., 243 Pa. 401.

OPINION BY MR. JUSTICE SIMPSON, July 1, 1921:

This proceeding originated when appellants, other than the Public Service Commission, filed with the commission complaints against appellee's new schedule of rates, eventuating in a decision greatly decreasing the valuation placed by appellee on its plant, and necessitating, if this conclusion was sustained, a reduction of the scheduled rates. The Superior Court overruled the commission, as to five of the items of valuation (68 Pa. Superior Ct. 561), the net result of which would have been to sustain the rates. On appeal, we reversed, and approved the findings and order of the commission (260 Pa. 289), largely because we were of opinion that the

facts found by it should be considered as established, since there was evidence to support them; but the Supreme Court of the United States, in turn, reversed us (253 U. S. 287), upon the ground that "The State must provide a fair opportunity [to a utility company] for submitting that issue [of confiscation by fixing too low a rate] to a judicial tribunal for determination upon its own independent judgment as to both law and facts; otherwise the order is void because in conflict with the due process clause. Fourteenth Amendment." In obedience to its mandate, we remitted the record to the Superior Court, for further proceedings in accordance therewith, it being the "judicial tribunal" charged by the Public Service Company Law (article VI, section 22) with the duty of determining "whether or not the order [of the commission] appealed from is reasonable and in conformity with law," and, on appeal, as therein provided, a judicial review of the proceedings and orders of the commission may be had, under article VI, sections 17 to 29, inclusive. Upon reconsideration, its opinion remained unchanged as to all the points involved (75 Pa. Superior Ct. 290), and it therefore decreed that "the order of the commission [be] reversed, and the record remanded with instructions to dismiss the complaints." Later, we allowed the present appeal, but restricted the argument thereon to three questions, the first, in the natural order of consideration, being: "The scope of review to be made by the Supreme Court of the decision of the Superior Court; whether it shall go beyond ascertaining if there is any evidence on the record to sustain the final conclusions of fact of the Superior Court."

It will be noted the decision of the Supreme Court of the United States requires only that one "judicial tribunal" shall exercise "independent judgment as to..... the facts at issue"; and this having been secured, in the present instance, by the action of the Superior Court, we are at liberty, on appeal from its decree, to follow the method prescribed by the Public Service Company

Law in regard thereto, in the light of our long established practice in appellate proceedings.

Turning then to the act, we find, by section 30 of article VI thereof, as amended by the Act of July 11, 1917, P. L. 808, that appeals to us, in these cases, "shall be taken and prosecuted in the same manner and with the same effect, as is provided in other cases of appeal from the Superior Court to the Supreme Court"; but neither this provision, nor section 1 of the Act of June 16, 1836, P. L. 785, or section 2 of the Act of May 20, 1891, P. L. 101 (which latter acts give us the power, after we have decided that the judgment or decree appealed from is erroneous, to finally end a case, by an appropriate judgment or decree, or, in our discretion, to remit it for further proceedings), in any way affects the rule that only errors of law, appearing on the record, will be considered on appeal,—a practice which, admittedly, has always been in force in this court,—must have been known to the legislature, as a coördinate branch of the government, and, moreover, is the natural, if not the necessary, result in cases where we have an appellate jurisdiction only. The conclusion stated being correct, it must be presumed the legislature intended, when it authorized appeals from the Superior Court to us, in this class of cases, that we should apply the existing rules and methods of procedure thereto, and not assume additional power since it was not conferred, either expressly or by necessary implication. This being so, how, far should we go, in this appeal, in passing upon disputed questions of fact?

Originally the character of relief provided by the act could be obtained only in a court of chancery, and, at the time of its passage, this was still the case at least as to certain utilities; of course, it continues of the same nature, though now regulated by statute, especially as the proceedings thereunder, the method of considering the questions raised, and indeed the nomenclature used in the act, including the "final decree," which ends the

proceedings in the Superior Court (article VI, section 24), all partake of the character of chancery proceedings, rather than of those at law; hence the practice, as applicable to appeals in equity, should be applied to this class of cases also. Admittedly, this ordinarily requires us to investigate the facts only so far as they are challenged, and then solely for the purpose of determining whether or not they "have been found without proof, or material facts established by the proofs have not been found": Worrall's App., 110 Pa. 349, 362; McConville v. Ingham, 268 Pa. 507. If a doubt exists, we must affirm; for the "findings of fact of a judge, which involve the credibility of witnesses and the weight to be given their testimony, will be given the effect of a verdict of a jury, and they will not be disturbed where there is testimony to support them": Eppsteiner v. Isman, 239 Pa. 393, 394; Cruzan v. Cruzan, 243 Pa. 165, 166; Shimer v. Aldine Trust Co., 264 Pa. 444, 447. It follows that, if we ascertain that disputed "facts have been found without proof," we must reject them, but if with proof we should accept them; and this rule applies though the court below did not see the witnesses, for all facts proved, or derived by inference from those which are proved, and necessarily found by a jury in reaching its verdict, are treated as established when considering the case on appeal,—and, indeed, are res adjudicata in all subsequent proceedings between the same parties, —even though their only basis was depositions read at the trial; the same thing is true of the findings of a chancellor, though based solely on the same kind of testimony. Moreover, it is difficult to understand why appellants antagonize this settled rule, since Mr. Rilling, the only commissioner who saw and heard the witnesses, and examined the properties being valued, dissented from the principal findings upon which they rely.

We are of opinion, therefore, that the scope of our review of the findings of fact of the Superior Court, in this, as in all other cases, is simply to determine matters

of law, included in which is the question whether or not there is substantial evidence to sustain a challenged finding of fact, duly brought before us for consideration; and that we are not called upon to weigh the evidence, as if we were a court of first instance, charged with the duty, upon our own "independent judgment," to determine what are the facts of the case. As already suggested, this the Superior Court is required to do, in order to determine, by judicial review, as the statute provides, "whether or not the order appealed from is reasonable and in conformity with law."

In this light, we approach the consideration of the next matter argued before us, viz: "The constitutional question of confiscation presented to and decided by the Superior Court"; and we do so unembarrassed by what we said, respecting the facts, in our prior opinion (260 Pa. 289) ; for, in this respect, our legal position remains unchanged. There, as here, we recognize there was conflicting testimony regarding the five matters of valuation still in dispute, one part of which evidence, if believed, would sustain the findings of the commission, and the other part, if believed, would sustain the antagonistic findings of the Superior Court; there, we gave to the findings of the former the effect of a verdict by a jury, and reversed the Superior Court for not doing likewise; now, better advised, we give that effect to the findings of the latter, because it is the "judicial tribunal," whose "independent judgment" is required, under the Constitution of the United States, in order that the statute may not violate due process of law.

There can, of course, be no confiscation when a utility company receives a reasonable return on its investment, but, if it is deprived thereof, confiscation necessarily results. The water company, in the present case, insists that unless there is allowed to it the rates which it filed, it will not get such reasonable return; this is disputed by appellants, and the decision of this question turns on what valuation, if any, is to be given to the five items,

above referred to, regarding which the Superior Court reversed the commission.

The first of these is: What interest should have been allowed, upon the investment of the water company, prior to the time when its plant became operative? Everybody concedes it was entitled to some interest during this period, the only question being as to the time for which allowance should be made. The engineers of both sides agree that the "construction period [was] two and a half years for lands and two years and less for plant," and that interest should be allowed at the rate of six per cent per annum. Some of the money raised was needed for the purchase of real estate and hence was required before actual construction began; some in the early stages of the work; and some in later stages. It does not appear when interest actually began on the money raised for construction purposes, and hence the commission allowed it during an average period of one and a half years, whereas the Superior Court, for reasons stated by it, allowed it during two and a half years, evidently because the money was probably raised, or arranged for, before the work had begun or materially progressed. As we said when the case was here before (260 Pa. 308), "This was a matter of judgment to be exercised upon consideration of the facts"; it remains so, and we think, in view of the conclusion as to our duty as an appellate court, that the matter is not so clear as to justify us in overruling the Superior Court's finding in regard thereto.

The next question involved is that of "going-concern value"; that is to say, the difference between the value of the plant as a going-concern and its value as a constructed but idle plant. That this should be considered, is directly stated in article V, section 20 (a) of the Public Service Company Law, and we so held in Turtle Creek Borough v. Pennsylvania Water Company, 243 Pa. 401; hence the only questions open are (1) whether it was actually included in the commission's valu-

ation of the plant, and (2) whether the amount allowed by the Superior Court has adequate evidence to support it? Mr. Rilling dissented from the report of the commission, partly because appellee should have been allowed for the going-concern value of its property; it certainly was not directly granted, the majority saying, "due consideration will be given to this item in determining the fair value of the properties for rate-making purposes," but it does not specifically say it was in fact done, or what allowance, if any, was made for it. We are not concerned with the question as to whether it should be valued as a separate item and added to the value of the plant, or whether the two should be valued together, but whether it was in fact allowed at all. It certainly is not clear the commission gave to the water company any benefits by reason of this admitted value, and hence we cannot reverse the Superior Court's finding it did not, nor the allowance made, which was justified, in amount, by the evidence produced.

The next question to be considered is the value of the Neville Island real estate. Every one concedes it had to be valued; the majority of the commission say it was worth $48,800; Mr. Rilling, who, as stated above, was the only commissioner who saw and heard the witnesses and examined the property, says it had "a fair valuation of at least $100,000"; there was evidence it was worth two and a half times that amount; the Superior Court found it was worth $100,000, with which, under the appellate practice stated, we would not be justified in interfering.

The next question is "What was the value of the parallel lines of pipe which were purchased by appellee from the Monongahela Water Company?" It appears that at one time a rivalry existed between the water companies in a part of the territory now occupied by appellee alone, and during that period parallel pipe lines had been laid on certain streets therein. These parallel lines were purchased, are now used by appellee, and an

income is derived from their use. There is agreement as to their value, but the commission, treating the matter as if it was a case of overdevelopment, because the lines were not then being used to their full capacity, allowed only one-third of the agreed valuation, though the rentals, paid by owners connecting therewith, were considerably in excess of the percentage of return allowed by the commission in fixing the rates. The commission admits that "these parallel lines are used and useful," and the Superior Court said that because they "are useful for the present operation and for future development, and may become very necessary in case of trouble with the other line," their entire reproduction cost should have been allowed at the agreed valuation. Under all the facts above stated, this seems just, and certainly is not clearly erroneous.

The last of the five questions is, Whether or not brokerage, on the sale of the bonds of the water company, should have been allowed? The commission says that sufficient evidence of actual payment thereof was not produced, but everybody knows that expenses are necessarily incurred in such sales; even our Victory and Liberty Loans could not be marketed except at a very heavy cost. There is no legal principle standing in the way of making a proper allowance therefor, and it is difficult to understand the basis of the mistake of those who hold it should not be allowed. The matter is in the same situation as if appellee had placed its bonds in the hands of an agent, with direction to sell them and apply the proceeds, as needed, for construction expenses. These bonds were all that the water company had to apply in payment of the plant, and the use thereof for this purpose, in the final analysis, constituted simply an exchange of one for the other. If it had been remembered that money itself has no value except that given it by reason of the fact that other commodities can be obtained in exchange therefor, the error of refusing to al-

low this, as a principal expense, would probably not have been made.

Section 7, article XVI, of the Constitution of the Commonwealth, recognizes the right of any corporation to issue stocks or bonds "for money, labor done or money or property actually received"; in substance, this is what occurs in every case of a bond flotation for the purpose of raising money to pay for labor and materials necessary in the construction of a business plant. Of course neither the commission, nor the courts, would justify more than a reasonable allowance for this purpose; for anything beyond that would be an indirect violation of the constitutional provision above referred to.

In the instant case, the evidence would seem to justify the conclusion that expenses were paid in selling the bonds, but neither the exact purpose of the payments, nor the amount thereof, clearly appears. Common experience shows, however, the bonds could not have been marketed without paying brokerage, either to the persons who sold them, or by reduction from par value on their sale to a purchaser, or both; especially in the case of an investment, somewhat problematical as to safety, as was the fact with regard to all these utilities in the beginning. The Superior Court inferred that, as usual, brokerage was paid (at the rate agreed upon as proper, if any allowance was to be made), and we cannot say this was clearly erroneous.

In order to render innocuous the error made in our prior opinion, that "brokerage for the sale of its bonds ......should properly be considered in connection with the interest charge, and should not be included in the fixed capitalization of the company as the basis of a permanent charge," we now overrule it. As stated, brokerage is a principal expense, just as it would have been had the labor and materials been paid for in bonds at their market value, as in effect was done.

The last question we directed to be argued is: "The propriety of the form of the order entered by the Supe-

rior Court." The allowance of the sums hereinbefore considered, when added to the valuations made by the commission, and not now disputed, sustain the rates charged by appellee. In its first opinion, the Superior Court reversed the order of the commission, directed it to reform its valuation and fix a schedule of rates accordingly. Its final decree is that "The order of the commission is reversed and the record is remanded with instructions to dismiss the complaints." Article VI, section 24, of the Public Service Company Law, provides that the Superior Court "may enter a final decree reversing the order of the commission, or, in its discretion, it may remand the record to the commission, with directions to reconsider the matter and make such order as shall be reasonable and in conformity with law." Under this, we should not reverse the "discretion" exercised by the Superior Court, unless we are satisfied it has been abused; in the instant case it has not; there are sound reasons for ending this protracted litigation; interest reipublicæ ut sit finis litium.

The decree of the Superior Court is affirmed and the appeal is dismissed at the cost of appellants.