# Bangor Water Company, Appellant, *v.* Public Service Commission.

*Public Service Commission—Water companies—Rates—Judicial determination of matter in controversy—Review by Superior Court.*

On an appeal from the order of the Public Service Commission, where the appellant claims that the order of the commission would result in a confiscation of its property, the Superior Court is required to examine the record and determine upon its own independent judgment, as to both law and facts, whether such claim is justified.

Confiscation results when the order of the commission refuses a utility company a fair return upon its property devoted to and used for public purposes.

*Public Service Commission—Rates—Rate structure—Valuation —Original cost of reproduction.*

As a public service company may not· be protected in its actual investment, if the value of the property be plainly less, so the making of a just return for the use of the property involves the recognition of its fair value if it be more than its cost. The property is held in private ownership, and it is that property and not the original cost of it, of which the owner may not be deprived without due process of law.

A public service company is entitled to a fair return upon such property's present value; that is, its reasonable value at the time of its being used for the public. In determining the present fair value

of a public utility's property, the reproduction cost new, at fair average present prices, less accrued depreciation, is of great use and should properly be considered as to plant and structure, exclusive of land, although it is not necessarily the same as the reasonable present value of such property.

*Rates—Fair return—Operating expenses—Federal taxes—State taxes.*

Federal taxes, levied against the corporation, are properly allowable as expenses of a public utility, though to be taken into consideration in determining the fair return to the company's stockholders.

Taxes on corporate loans paid the State are not to be included in operating expenses. That is not a tax against the corporation, but against the bondholders. The corporation is only the agent of the State in its levy and collection.

*Public Service Commission—Valuation — Confiscatory order — Reversal.*

On an appeal from the decision of the Public Service Commission, fixing the value of the property of a water company for rate-making purposes, the Superior Court, after reviewing the testimony, found the fair value of the property to be $275,000, whereas the order of the commission had fixed but a valuation of $218,000. Under such circumstances, the order of the Public Service Commission was confiscatory and in violation of the due process clause of the Federal Constitution and will be reversed.

Argued April 11, 1923. Appeal, No. 288, Oct. T., 1922, by Bangor Water Company, from order of the Public Service Commission of the Commonwealth of Pennsylvania, Complaint Docket No. 3459, in the case of George H. Wise et al. v. Bangor Water Company. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Complaint against Bangor Water Company on account of increased rates effective June 1, 1920.

The facts appear in the opinion of the Superior Court.

The commission made the following order:

This matter being before the Public Service Commission of the Commonwealth of Pennsylvania upon rehearing duly granted, and having been submitted by the

parties and full investigation of the matters and things involved having been had, and the commission having on the date hereof made and filed of record a report containing its findings of fact and conclusions thereon, which said report is hereby approved and made part hereof:

Now, to wit, October 10, 1922, it is ordered: That the complaint be and it is hereby sustained, and that the Bangor Water Company, respondent, within fifteen (15) days from the date of service hereof, file, post and publish, effective upon one day's notice to the public and this commission, a new tariff schedule calculated to produce a gross annual revenue, equitably apportioned, of $23,595 as itemized in the foregoing report; said tariff schedule to provide for a minimum charge of one dollar and twenty-five cents ($1.25) per month for a three-quarter (3-4) inch meter or less, and a minimum charge of two dollars ($2.00) per month for a one (1) inch meter.

It is further ordered: That the Bangor Water Company, respondent, revise its rules and regulations in accordance with the findings, determinations and conclusions contained in the foregoing report.

It is further ordered: That the report and order of the commission of April 10, 1922, be and the same is hereby rescinded.

*Error assigned,* among others, was the order of the commission.

*J. E. Mullin,* and with him *Joseph A. Beck,* for appellant.

*Everett Kent,* for intervening appellees.

*Frank M. Hunter,* Counsel, and with him *John Fox Weiss,* Assistant Counsel, for the Public Service Commission.

OPINION BY KELLER, J., October 5, 1923:

Bangor Water Company filed with the Public Service Commission a new schedule of rates, calculated to produce an annual revenue of about $32,000, and increasing the rates charged both domestic and commercial users of water. Before its effective date complaint was filed by various customers alleging that the new rates were excessive, unfair, unjust and unreasonable. Testimony was taken before an examiner appointed by the commission. Argument was had before the commission, and an order filed. The case was subsequently reopened, and additional testimony taken, and the commission then filed its order sustaining the complaint, reducing the minimum monthly charges for meter service, and disapproving of certain rules. It valued the used and useful property of the water company at $218,000 (including about $15,000 expended in improvements since the filing of the complaint), and allowed 7% annual fair return thereon, ($15,260), annual depreciation of ¾ of 1% on $178,000 ($1,335), operating expenses, $6,500, and amortization of expenses of litigation to the extent of $500 a year for three years, and directed the company to file a schedule of rates, equitably apportioned, calculated to produce a gross annual revenue of $23,595. From this order the water company has appealed, alleging that the rates thus imposed are confiscatory of its property.

Bangor Water Company was incorporated June 17, 1884, with an authorized capital stock of $20,000. Accurate records are available only since February 2, 1896, at which time it had outstanding capital stock of the par value of $16,200, and bonds of the face value of $35,000. It obtains its water from a number of springs and artesian wells located on high ground, which it impounds in reservoirs and supplies by gravity to its patrons in the boroughs of Bangor and Roseto. It operates in the latter borough under a ninety-nine year lease from the Roseto Water Company, made in 1913; it is, however, conducted as one system and will be treated as such.

As the appellant claims the order of the commission will result in confiscation of its property, we are required to examine the record and determine upon our own independent judgment as to both law and facts whether such claim is justified: Ohio Valley Water Co. v. Ben Avon Boro., 253 U. S. 287; Ben Avon Boro. v. Ohio Valley Water Co., 271 Pa. 346; and confiscation results when the order of the commission refuses the utility company a fair return upon its property devoted to and used for public purposes: Ibid, 271 Pa. 353.

Our public service company law (Art. V. Sec. 20) directs the commission to give due weight to all the elements of value proper to be considered in ascertaining and determining the fair value of the utility company's property, specifically mentioning the following: (1) the original cost of construction, particularly with reference to the amount expended in the existing and permanent improvements; (2) such consideration for the (a) amount in [and] market value of its bonds and stocks, (b) the probable earning capacity of the property under the rates fixed by the commission and (c) the items of expenditure for obsolete equipment and construction, as the circumstances and the historical development of the enterprise may warrant; (3) the reproduction costs of the property based upon the fair average price of materials, property and labor; and (4) its developmental and going concern value.

. . With respect to the original cost of construction, there seemed to be a wide divergence between the figures as shown by the books of the company and as set forth in the report of the Bureau of Accounts and Statistics of the commission, the former being $314,448.83, the latter, $187,141.03; but an examination of the company's books show fictitious expenditures for real estate amounting to $127,800,—subterfuges for the issue of bonds and stock to that amount—, and deducting this sum, the company's books show an original construction cost of $186,648.83, practically the commission's figures. Adding the

amount expended for permanent improvements since the
making of that report, we find the original cost of the
present plant to be approximately $202,000. While this
is to be considered in determining the value of appel-
lant's property, it is not the measure of such value. "As
the company may not be protected in its actual invest-
ment, if the value of the property be plainly less, so the
making of a just return for the use of the property in-
volves the recognition of its fair value if it be more than
its cost. The property is held in private ownership, and
it is that property and not the original cost of it, of which
the owner may not be deprived without due process of
law": Minnesota Rate Cases, 230 U. S. 352, 454.

.Capital stock is outstanding of the par value of $80,-
920. Of this, $27,300 was issued in 1899, ostensibly for
the purchase of real estate, but really as the declaration
of a 150% stock dividend; and $20,500 was issued in
1902 in connection with the purchase of another tract of
land, but in reality as a cloak for other purposes. Bonds
of the par value of $150,500 are issued and outstanding,
but of this amount, $81,000 represents bonds issued in
1902, in connection with the purchase of the same land
for which $20,500 stock was given, but actually for other
purposes. No evidence was given as to the market value
of the bonds and stock, beyond that the interest on the
bonds (5%) was regularly paid and dividends on the
stock regularly distributed since 1896, ranging from 4%
to 7% annually since 1907.

The company owns approximately 766 acres of land
and a number of rights of way in connection with its
wells, water shed, reservoirs, stand pipe and distribution
system. The complainants valued this land, etc., at its.
approximate original cost, $25,000. The commission
found this amount to be "insufficient" but did not state
its present fair market value, which is, ordinarily, the
true criterion as to real estate: Minnesota Rate Cases,
supra, pp. 451-456; Denver v. Denver Union Water Co.,
246 U. S. 178, pp. 183, 191; Ben Avon Boro. v. Ohio Val-

ley Water Co., 68 Pa. Superior Ct. 561, 583; 75 Pa. Superior Ct. 290, 295; 271 Pa. 346, 355. Witnesses for the appellant fixed the value of this land at from $49,750 to $76,600, four valuing it at $50,000. We are satisfied that its present fair market value is approximately $50,000. No additions will be made to this amount "by the use of multipliers or otherwise to cover hypothetical outlays": Minnesota Rate Cases, supra, p. 455.

With respect to the reproduction cost of the plant, exclusive of real estate, the appellant's engineers submitted three estimates based as follows: (1) On average unit costs for the ten year period ending September 1, 1920; (2) on average unit costs for the five year period ending the same date; and (3) on average unit costs as of September 1, 1920. On the rehearing they also presented three additional estimates based on average unit costs as of, (4) June, 1920, (5) June, 1921, and (6) June, 1922. These estimates showed reproduction costs new, and less accrued depreciation, of the physical plant, exclusive of overhead, engineering, contingencies, interest, working capital and going concern value, etc., as follows:

|  | Est. (1) | Est. (2) | Est. (3) | Est. (4) | Est. (5) | Est. (6) |
|---|---|---|---|---|---|---|
| Rep. cost new | 209,693 | 302,235 | 417,212 | 396,774 | 292,586 | 226,932 |
| Rep. cost new less depreciation | 201,989 | 291,859 | 403,715 | 383,899 | 282,366 | 218,787 |

To these figures were added estimated costs of engineering and contingencies, general administration, organization, interest, and cost of financing, totalling 24½%; equipment, material and supplies, $5,241; operating capital, $2,500; and going concern value, $25,000, making the total reproduction cost new less depreciation (exclusive of real estate) as estimated by appellant's engineers as follows:

| Est. (1) | Est. (2) | Est. (3) | Est. (4) | Est. (5) | Est. (6) |
|---|---|---|---|---|---|
| 288,986 | 403,051 | 544,656 | 518,152 | 389,925 | 309,631 |

The complainants' engineer, on the other hand, presented an estimate of what he called the historical reproduction cost of appellant's plant in which he valued the physical plant, exclusive of real estate, as of the dates when constructed at $126,635 new and $112,445 as depreciated. He allowed 10½% for intangible construction costs, $2,000 for operating capital, $525 for material and supplies, but nothing for going concern value, making the total cost new as of the respective times when constructed (exclusive of land) $142,285, and $126,930, as depreciated. As before stated, complainants valued the land at $25,000.

We are satisfied that none of these estimates accurately fixes the present fair value of appellant's property, used and useful in the public service, for rate making purposes. Complainants' is of little use for it is frankly based, not on the fair average price of materials as of the present, but at the times when the plant was built and enlarged. The decisions of the Supreme Court of the United States require us to base the fair return upon its present value; that is, its reasonable value at the time it is being used for the public: Willcox v. Consolidated Gas Co., 212 U. S. 19, 41: Minnesota Rate Cases, supra, p. 434; San Diego Land & Town Co. v. National City, 174 U. S. 739, 757; City of Houston v. Southwestern Bell Tel. Co., 259 U. S. 318, 324. In determining the present fair value of a public utility's property the reproduction cost new at fair average present prices, less accrued depreciation, is of great use and should properly be considered as to plant and structures, exclusive of land: Denver v. Denver Union Water Co., supra, p. 192; though it is not necessarily the same as the reasonable present value of such property: Ben Avon Boro. v. Ohio Valley Water Co., 68 Pa. Superior Ct. 561, p. 577; and it is the latter on which the reasonable rate of return is to be based. That engineers differ as to the elements to be considered, the fair average prices to be employed, the percentages to be added for intangible costs of construc-

tion, the depreciation which has accrued and the method of determining it, going concern value and its ascertainment, these and other considerations show that it is not a hard and fast method of arriving at present fair value, and that each case must be controlled to some extent by its own circumstances: Denver v. Denver Union Water Co., supra, p. 192. But a fair return upon properties devoted to the public service cannot be determined without giving consideration to the cost of labor and supplies at the time the investigation is made: State of Missouri ex rel. Southwestern Bell Tel. Co. v. P. S. C. of Mo., decided by United States Supreme Court, May 21, 1923, not yet reported, (see advance opinions of United States Supreme Court, June 15, 1923, p. 619); Bluefield Water Works & Improvement Co. v. P. S. C. of W. Va., decided by United States Supreme Court June 11, 1923, not yet reported, (advance opinions, July 2, 1923, page 715). But on such consideration we are not, perforce, bound to adopt the estimates of reproduction cost new less depreciation presented by the engineers, as representing the reasonable present value of the company's plant: Georgia Ry. & Power Co. v. R. R. Com. of Ga., filed in United States Supreme Court June 11, 1923, not yet reported, (advance opinions, July 2, 1923, page 728).

Considering then the estimates presented by appellant's engineers, we are satisfied that the accrued depreciation allowed in them is far too low. With respect to the estimate based on average prices for ten years prior to September 1, 1920,—the figures chiefly relied on by appellant—, it is less than three years annual depreciation demanded by appellant, based on the same figures. There is a wide variance between the several engineers in this respect using the same method of computation. So the percentage of intangible costs in the appellant's estimates is, in our judgment, entirely too high for a water plant of this character. We are of opinion that such intangibles should in this case not exceed 12%; and a going concern value of $25,000, is, in the light of

the immediately successful earning record of the company, excessive. No allowance is to be made for good will, "as indicating that element of value which inheres in the fixed and favorable consideration of customers, arising from an established and well-known and well conducted business": Des Moines Gas Co. v. Des Moines, 238 U. S. 152, pp. 164, 165. "Going concern value" is, rather, the cost of developing the plant into a financially successful concern: Ben Avon Boro. v. Ohio Valley Water Co., 68 Pa. Superior Ct. 561, 587. There was no long period, in the history of this company, required to develop it into a successful going concern. In fact, the plant has been largely built, extended and improved out of surplus earnings, over and above the dividends declared on the stock. While this fact cannot be used to depress the present fair value of the company's property, it is to be considered in the allowance of going concern value: Des Moines Gas Co. v. Des Moines, supra, p. 166; Galveston Electric Co. v. Galveston, 258 U. S. 388, p. 396; City of Houston v. Southwestern Bell Tel. Co., supra, p. 325.

We are of the opinion that considering all elements proper to be considered in the valuation of appellant's property used and useful in the public service, including going concern and developmental cost, and allowing $2,500 for working capital, $50,000 as the value of the real estate and $15,000 for recent permanent improvements, the present fair value of its property for rate making purposes is $275,000, on which it is fairly entitled, (as found by the commission), to an annual return of 7% or $19,250, and an annual depreciation of ¾ of 1% on $200,000 thereof, or $1,500.

We sustain none of the objections to the commission's findings as to operating expenses, except the exclusion of federal taxes levied against the corporation. The Supreme Court of the United States has recently ruled that such taxes are properly allowable as expenses, though to be taken into consideration in determining the fair re-

turn to the company's stockholders: Galveston Electric Co. v. Galveston, supra, pp. 399, 400; Georgia Ry. & Power Co. v. R. R. Com. of Ga., supra, (decided June 11, 1923). The tax on corporate loans paid this State is not to be included in operating expenses. It is not a tax against the corporation, but against the bondholders. The corporation is only the agent of the State in its levy and collection. If it chooses to pay the tax out of its own resources instead of deducting it from the interest paid the bondholders, that is its privilege, but it cannot pass on the burden thus assumed as an expense to the public. We consider the allowance of the commission for salaries and administration expenses reasonable in the circumstances. The patrons of the Bangor Water Company have nothing to do with the salaries of the officers of the Roseto Water Company and cannot be called upon to contribute to their payment: Citizens Pass. Ry. Co. v. P. S. C., 271 Pa. 39. Salaries were evidently fixed by the Directors not with regard to the reasonable compensation of the officers, but so that the four principal owners of the stock, who are also directors, might share equally in the distribution of such compensation as they did in the dividends.

We are not disposed to interfere with the allowance of $1,500 expenses of this litigation, amortized during three years. If we did, it would be to disallow it altogether.

On the basis of the foregoing determination of a 7% rate of return the allowable revenue would be made up as follows:

| | | |
|---|---:|---:|
| Fair return, 7%, on $275,000 | | $19,250 |
| Annual depreciation | | 1,500 |
| Operating expenses. | $6,500 | |
| Federal taxes (Est.) | 250 | 6,750 |
| | | $27,500 |
| Amortization allowance, annually for three years .................... | | 500 |
| | | $28,000 |

The order of the commission fails to allow a fair return on the value of the appellant's property used and useful in the public service, and to the extent that it falls short of doing so, is confiscatory (Bluefield Water Works & Improvement Co. v. P. S. C. of W. Va., supra), and must be reversed or modified in so far as necessary to conform with our findings. Order reversed or modified to accord with this opinion; and it is ordered that the appellant file with the commission within fifteen days after the return of the record, to become effective on one day's notice, a schedule of rates equitably apportioned, calculated to produce a gross annual revenue of $28,000.