Frederick's Estate.

Argued October 7, 1937.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, JAMES and
RHODES, JJ.

*Abraham Wernick,* and with him *A. L. Shapiro,*
*William T. Cooper* and *Louis R. J. Fenerty,* Assistant
City Solicitors, and *Joseph Sharfsin,* City Solicitor,
for appellant.

*Joseph P. Gaffney,* with him *Alexander S. Bauer* and *Joseph P. Gaffney, Jr.,* for appellee.

OPINION BY CUNNINGHAM, J., March 4, 1938:

The question which we are called upon to decide in this case is whether the City (and County) of Philadelphia has the right to assess and collect the four mill County Personal Property Tax upon a verdict (and subsequent judgment thereon) obtained against the city, itself, as the result of proceedings instituted by it for the condemnation of certain real estate.

It arose and was adjudicated by the orphans' court under these circumstances. Mary J. Frederick was the owner of property in the city of Philadelphia, bounded by Haverford Avenue, 68th Street, Cobbs Creek Park and Lansdowne Avenue, which was appropriated by the city under its power of eminent domain. Following the death of Mrs. Frederick, her executrix, Sarah Boyer, appealed to the common pleas on October 26, 1931, from the award of the Board of View. On April 21, 1932, she recovered a verdict in the sum of $91,000, upon which judgment was entered in her favor and against the city on April 19, 1934. A mandamus was issued for the collection of this judgment. In December, 1934, the executrix filed her account in the orphans' court, including therein, as we understand the record, the proceeds of the judgment. At the audit the city presented its claim against the fund for a tax of four mills, with interest, for the year 1933 upon the amount of the verdict, aggregating $385.84, and a claim of $364 as the tax upon the judgment for the year 1934. If the assessments are valid, the total amount due the city thereon is admittedly $749.84. The assessments were made and the claims presented upon the theory that the $91,000 due from the city to the estate during the years 1933 and 1934 was taxable "for city and county purposes" under the provisions of Section 1 of the Act of June 17,

1913, P. L. 507, as amended by the Acts of April 30, 1929, P. L. 871, and May 2, 1929, P. L. 1509, 72 PS §4821.

The auditing judge, STEARNE, J., rejected the claims, and the city's exceptions to his adjudication were dismissed by the court in banc in an opinion (23 D. & C. 475) by KLEIN, J. The city has appealed from a final decree of distribution, entered April 12, 1937; this appeal has been consolidated with a prior premature appeal to October Term 1935. One of the provisions of the decree is that the accountant named therein retain $1,500 until final disposition of this appeal, which amount will then be distributed in accordance with a further order of the court below.

Although several questions were raised and disposed of below, counsel for the city have stated the only question here involved in the following language: "Is a liquidated claim for damages when arising out of the condemnation of property by a municipality under its power of eminent domain, taxable under Section 1 of the Act of June 17, 1913, P. L. 507, as amended and supplemented?"

Section 1 of the Act of June 17, 1913, as amended, supra, levies a tax for county purposes, and in cities co-extensive with counties for city and county purposes, on, inter alia, the following personal property: "All mortgages; all moneys owing by solvent debtors whether by promissory note, or penal or single bill, bond or judgment; all articles of agreement and accounts bearing interest; all public loans whatsoever, except those issued by this Commonwealth or the United States, and those made taxable for State purposes by Section seventeen hereof ......"

Counsel for appellant, after pointing out that when land is condemned for public use the fund received in payment is personal property, contended below and argued here: "That the phrase 'solvent debtors' when used in section one of the Act of 1913, [as amended],

under the general rules of construction of necessity included *all debtors;* and that by comparing section 17 of the Act with section 1, it will be seen that the corporate indebtedness whether that of *municipal corporations or private corporations,* not taxable under section 17, should be taxable under section 1." (Italics theirs)

This contention was rejected by the court below upon several grounds: (a) That the phrase "all moneys owing by solvent debtors" was "intended to apply to obligations of private individuals or associations"; (b) That the phrase "all public loans" was "intended to be inclusive of all taxable public obligations," and that a judgment is not a "public loan"; and (c) That it is unreasonable and inequitable to permit the city to collect a tax upon a judgment rendered against it as the result of its failure to meet its obligations.

A majority of the members of this court are of opinion that the decree should be affirmed, although not for the reasons given by the court below. It may be granted that a verdict (at least one which ultimately ripens into a final judgment) represents moneys owing by a debtor within the meaning of the Act. It is a liquidated sum, evidenced by the records of the court and bearing interest from the date it is rendered. We think, however, that if the obligation, evidenced by this verdict, is taxable under the Act of 1913, it is taxable, not for county purposes under Section 1 but for state purposes under Section 17, because it represents an obligation of a municipal corporation.

The pertinent portion of Section 17, as amended by the Acts of July 15, 1919, P. L. 955, and July 13, 1923, P. L. 1085, 72 PS §2121, reads as follows: "All scrip, bonds, certificates, and evidences of indebtedness issued, and all scrip, bonds, certificates, and evidences of indebtedness assumed, or *on which interest shall be paid,* by any and every *private* corporation, incorporated or created under the laws of this Common-

wealth or the laws of any other State or of the United States, and doing business in this Commonwealth, and all scrip, bonds, certificates, and evidences of indebtedness issued, and all scrip, bonds, certificates, and evidences of indebtedness assumed, or *on which interest shall be paid,* by any county, *city,* borough, township, school district, or incorporated district of this Commonwealth are hereby made taxable in the year one thousand nine hundred and nineteen, and annually thereafter, for *State* purposes, at the rate of four mills on each dollar of the nominal value thereof: ......"
(Italics supplied)

If verdicts of the character here involved represent moneys owing by a solvent debtor, they are equally "evidences of indebtedness ...... on which interest [is] paid by [municipalities] ......" We recognize the force of the argument made by the city as to the broad language of Section 1 and as to the specific inclusion therein of "judgments." However, Section 17 further provides (in the 1919 amendment) : "It is the intent of this Act that all scrip, bonds, certificates, and evidences of indebtedness made taxable under this section are not taxable under Section one (1) of the Act to which this is an amendment, and that only such scrip, bonds, certificates, and evidences of indebtedness which cannot be made taxable under this section are to be taxed under Section one (1) of said Act."

If, therefore, this evidence of indebtedness can be taxed under Section 17, it is not taxable under Section 1. We think the language of Section 17 is broad enough to include all obligations of either private or public corporations, whether the indebtedness be funded or floating.

A brief review of the history of Personal Property Tax legislation will, we believe, demonstrate the soundness of our conclusion.

The tax on personal property was first imposed by

the Act of April 29, 1844, P. L. 486. Included in the types of property taxable were "all mortgages, money owing by solvent debtors, whether by promissory note, penal or single bill, bond or judgment," all shares of stock in any bank or other corporation, and all public loans except those issued by the State of Pennsylvania. The tax was levied for state purposes. The language of the statute was the same in part as that which still appears in the Act in effect at the present time.

By the provisions of the Act of 1844, the county commissioners were required to assess the tax on all types of property made liable to taxation. The Act of April 30, 1864, P. L. 218, however, introduced a new system of collection so far as the tax on corporate obligations was concerned. It provided that any officer of any corporation "which pays interest to its depositors, bondholders, or other creditors, upon which, by the laws of the commonwealth, a state tax is imposed, shall, before payment of the same, retain from said depositors, bondholders, or creditors, the amount of state tax, imposed by existing laws, and shall pay over the same to the state treasurer." At this point, therefore, the distinction arose between what is now loosely called the personal property tax, paid directly by the creditor, and the so-called "corporate loans tax," collected by the officers of the corporate debtor from the interest due the creditor, and in turn paid over to the state. It will be noted, however, that the tax collected by corporations was not only a tax upon *loans,* as that term is technically understood, but included a tax upon all of its obligations which were made taxable by the Act of 1844. In other words, the Act of 1844 imposed the tax; the Act of 1864 merely provided a method of collection.

This system was continued in succeeding acts. Thus the Act of June 7, 1879, P. L. 112, 120, imposed a personal property tax with some additions on the same

items of property listed in the Act of 1844. This included individual obligations as well as corporate obligations. Collection of the tax on the latter type of obligations, however, was still made by the corporations themselves. The Act of June 30, 1885, P. L. 193, again listed the same subjects of taxation and made the same provision for collection by the corporations, although in that instance the tax was imposed upon the face value and not the actual value of the indebtedness. The Act further provided in Section 6 that "the taxable person shall not include in said return the obligations of *public or private corporations,* the tax upon which is required by law to be collected from the holder of such obligations and paid into the state treasury by the corporation." (Italics supplied)

As was said in the opinion in *Commonwealth v. Jacob Reed's Sons,* 25 Dauphin County Reports 117, which contains an excellent review of the statutes, "so it is apparent that the legislature by these various acts as indicated by the cases above cited, and many other cases to which reference is unnecessary, intended to separate personal property for taxation into two classes, although the subjects were enumerated in the same section of the Act of Assembly. The one class came to be known as the 'tax on loans' and, as indicated [by the cases cited], embraced the debts of private corporations. It was intended to embrace all of such debts, and from the passage of the Act of 1885, wherein the taxable was directed not to return to the local assessor for taxation the obligations of corporations, down to the passage of the Act of 1913, such obligations, if taxed at all, were taxed as loans, and the tax paid by the corporation, as the collector thereof."

The Act of 1913 was evidently prompted by the desire of the legislature to provide that the counties should, themselves, collect and retain a portion of the tax which previously had, in the first instance, been collected by

the state. It now seems clear that the general intention was for the counties to receive the tax on *individual* obligations and for the state to continue to receive the tax on the obligations of *private* and *public* corporations, which had previously been collected for it by those corporations. This rendered it necessary for the statute to impose the tax upon two separate and distinct classes of personal property. As actually passed, however, Section 1 of the Act of 1913 still included the reference to loans of corporations; while Section 17, which was intended to levy the tax for state purposes, included only the rather narrow language, "all scrip, bonds or certificates of indebtedness issued by any and every private corporation." Section 1 provided that none of the classes of property made taxable by that section for county purposes should be taxable for state purposes; while Section 17 provided, in turn, that none of the classes of property made taxable by it for state purposes should be taxed for county purposes.

The natural result of this draftsmanship was considerable confusion in the interpretation of the statute, since both sections purported in part to tax the same types of property. Consequently, in *Commonwealth v. Roxford Knitting Company,* 268 Pa. 266, 110 A. 720, and *Commonwealth v. Lehigh and New England Railroad Company,* 268 Pa. 271, 110 A. 725, it was held that both promissory notes and car trust certificates issued by corporations were taxable under Section 1, rather than Section 17, because they were specifically listed in the former section.

Following these decisions, the legislature amended Section 17 by the enactment of the Act of July 15, 1919, P. L. 955. In the first place, this Act of 1919 added to the classes of property made taxable for state purposes "evidences of indebtedness assumed, or on which interest shall be paid, by both private and public corporations." In the second place, it added the clause, already

quoted, to the effect that none of the obligations made taxable under Section 17 should be taxable under Section 1 of the Act of 1913.

This amendment has since been universally recognized as a return to the system in effect prior to 1913, under which all taxable indebtedness of corporations was taxed for state purposes and collected for the state by the corporation—a system which applies even though the debts taxed for state purposes are types specifically listed in Section 1. Thus, in *Commonwealth v. Jacob Reed's Sons,* supra, affirmed by the Supreme Court in 275 Pa. 20, 118 A. 543, promissory notes of corporations were again held taxable for state purposes. In *Commonwealth v. Megargee Bros., Inc.,* 275 Pa. 12, 118 A. 541, a similar ruling was made in regard to a corporate mortgage; and in *Commonwealth v. Imperial Woolen Co.,* 290 Pa. 526, 139 A. 199, to an account bearing interest, evidenced only by an entry on the books of the corporation. An extended discussion of the subject will be found in *Phila. Co. for G. M. v. Guaranty R. Co.,* 78 Pa. Superior Ct. 258, by Judge KELLER (now President Judge) where it was held that it is the duty of the treasurer of a corporation which has assumed a mortgage to withhold the tax out of interest upon the bonds secured thereby. Thus we now have a harmonious system, under which all debts owing from private individuals are returned by the creditor and taxed for county purposes; while debts owed by private corporations are returned by the debtor and taxed for state purposes.

For the same reasons, we are of opinion that judgments (and the antecedent verdicts) against municipal corporations are taxable for state and not for county purposes. It is true there is no precise authority on the point, and the previous discussion has related to private as opposed to public corporations. The logic of the cases cited, however, applies equally to the debts

of municipalities. Under the system in effect prior to 1913, the taxable obligations of municipal corporations were returned for tax purposes by the treasurer or other fiscal officer of the municipality and not by the creditor, the tax being deducted from the interest paid, as in the case of private corporations. Whatever the original Act of 1913 may have been intended to accomplish, it seems clear that in Section 17 it preserved for the state the tax on the same classes of municipal obligations as were taxed in the case of the obligations of private corporations. The amendatory Act of 1919 made identical additions to the list of the debts of both public and private corporations taxed for State purposes, adding in each instance, as already noted, the words, "evidences of indebtedness assumed or on which interest shall be paid."

In the light of the foregoing discussion, we think it clear that a judgment of record against a private corporation would be taxable under Section 17 as an "evidence of indebtedness on which interest is paid." It is equally clear that a verdict against a private corporation would be taxable under Section 17 and not under Section 1, because although it represents moneys owing by a solvent debtor, it is equally an evidence of indebtedness on which interest is paid; and if it can be taxed under Section 17, that section is controlling. For the same reasons, a judgment or a verdict against a municipality should be taxed for state and not for county purposes. The language used to describe the taxable indebtedness of municipalities under Section 17 is identical with that used in describing the taxable indebtedness of private corporations. Not only this, but it was inserted in the same amendment and, obviously, to cure the same evil. An identical meaning should, therefore, be given in considering each class of taxable subjects. It would do violence to all principles of statutory construction to hold that the judgments or verdicts

of a private corporation, under these circumstances, would be taxable for state purposes but those of municipal corporations would be taxable for county purposes only.

What we have said disposes of the claims of the City of Philadelphia; the decree rejecting them is sustainable. Nor can any claims be now made in the court below against the estate by the Commonwealth of Pennsylvania, because if it seeks to tax obligations of this nature, the tax is not payable by the judgment creditor but is collected for the state by the proper officer of the city out of any interest which may be paid upon the debt: Section 18 of the Act of 1913, as amended, 72 PS §2141. None of the assignments of error can be sustained.

Decree affirmed at costs of appellant.