Joy, Appellant, *v.* Fifteenth & Chestnut Realty Company.

Argued October 14, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Charles B. Joy,* appellant, in propria persona.

*William H. S. Wells,* with him *Saul, Ewing, Remick & Saul,* for appellee.

OPINION BY RHODES, J., February 28, 1941:

This is an action in assumpsit on an implied contract to recover from defendant corporation sums representing corporate loans tax which defendant deducted from interest payments when plaintiff presented interest coupons on certain bonds.

The case was tried before GLASS, J., sitting without a jury, who made a finding in defendant's favor. Plaintiff's motion for a new trial was dismissed, and judgment was entered on the finding in favor of defendant. Plaintiff has appealed.

The controversy arose under these circumstances: In July, 1927, plaintiff, a resident of Pennsylvania, purchased a $1,000 coupon bond, bearing 6 per cent interest, issued by C. Benton Cooper. The bond was one of a series of bonds issued in 1923 and maturing in 1933, being secured by a first mortgage on the property situate at Fifteenth and Chestnut Streets, Philadelphia, Pa., commonly known as the Packard Building. Immediately upon issue of the bonds on February 15, 1923, the obligation to pay interest thereon was assumed by defendant, and printed on the face of each bond was the following notice of assumption of payment of interest:

"NOTICE

"The payment of interest on the within bond has been assumed by a corporation and should not be returned by the holder for the personal property tax imposed by the State of Pennsylvania."

Prior to the maturity of these bonds, in February, 1933, an extension agreement was entered into whereby plaintiff, upon the surrender of his $1,000 bond, received a two hundred dollar check, a five hundred dollar bond, and three one hundred dollar bonds. The origin-

al bonds which had been surrendered when the extension agreement was consummated were used, and coupons for interest at 5 per cent for an additional ten-year period attached, and each bond endorsed with the necessary information covered by the extension agreement.[1] Plaintiff's bonds in the amount of $800 were therefore of the same issue as his $1,000 bond which he surrenderd, and contained the same endorsement as to notice. At the time of the maturity of the coupons, defendant was the owner in fee of the premises. As the interest fell due from 1929 to 1938, plaintiff deposited the coupons from the 6 per cent bond and also the coupons from the 5 per cent bonds, and defendant, through its paying agent, The Pennsylvania Company for Insurances on Lives and Granting Annuities, paid the interest after making deductions aggregating $46 for taxes. In August, 1938, prior to maturity, the 5 per cent bonds were called for payment at par; plaintiff surrendered his bonds and received the principal thereof, together with payment of interest on current coupons, less current tax reductions. Plaintiff demanded

---

[1]"The stated maturity of this bond has been extended to the 15th day of February, 1943, with interest payable in the interim at the rate of 5% per annum on the 15th days of August and February in each and every year. The holder of this bond accepts notice of and takes subject to all of the terms, covenants, and conditions of a certain supplemental and amending indenture dated for convenience as of the 15th day of February, 1923, and executed by and between the Fifteenth and Chestnut Realty Company, party of the first part, the Pennsylvania Company for Insurances on Lives and Granting Annuities, as trustee, party of the second part, and the holders of the first mortgage six per cent gold bonds then outstanding, as parties of the third part, and recorded in the office for the recording of deeds in and for Philadelphia County in mortgage book J. M. H. No. 7230, page 259, on the 15th day of July, 1933, to which reference is hereby made, and to all of the terms, covenants and conditions of which the present and every subsequent holder by acceptance of delivery of this bond agrees to be bound as fully as though a party signatory thereto."

return of the amounts which were deducted from February 15, 1929, to August, 1938. Defendant refused to return the same, whereupon plaintiff brought suit.

At the trial plaintiff did not press part of his claim amounting to $18, which defendant alleged was barred by the Statute of Limitations.

Plaintiff contends here, as in the court below, that defendant had no legal right to have any deduction made from the interest due on his bonds upon presentation of the interest coupons to defendant's agent, because notice of defendant's assumption of the indebtedness or the payment of interest thereon was fatally defective; and that therefore defendant was liable for the taxes deducted from the interest payments.

The court below, in refusing plaintiff's motion for a new trial, was of the opinion that defendant had done everything that by law it was obliged to do under the circumstances.

The question involved may be stated to be whether plaintiff, under the facts established, had notice of the assumption by a corporation of the payment of interest on his bonds as contemplated by statute. We agree that the statutory provision for notice to plaintiff was complied with.

Section 17 of the Act of June 17, 1913, P. L. 507, enumerated the subjects which were taxable for state purposes only. This section was amended by section 1 of the Act of July 15, 1919, P. L. 955, and section 1 of the Act of July 13, 1923, P. L. 1085, 72 PS §2121. The amendatory Act of 1923 provided for the giving of notice where the corporation became liable for such taxes upon evidence of indebtedness by it assumed, or on which it should pay interest, to the person who might at such time be liable for the payment of any tax upon such evidence of indebtedness under section 1 of the Act of June 17, 1913, P. L. 507, 72 PS §4821. This section was amended by the Act of December 22, 1933, Sp. Sess., P. L. 98, §1. It was incorporated under section 19 of the

Act of June 22, 1935, P. L. 414, which imposed an additional tax of one mill for state purposes; this act was renumbered and amended by the Act of July 17, 1936, Sp. Sess., P. L. 51. Section 17 of the Act of 1913, and its amendments were repealed by section 20 (b) of the Act of May 18, 1937, P. L. 633, which act reenacted and amended the Act of June 22, 1935, P. L. 414. By the Act of May 5, 1939, P. L. 76, the Act of June 22, 1935, was again reenacted and further amended. Section 19 of the Act of 1935, section 17 of the Act of 1937, and section 17 of the Act of 1939, are substantially the same as section 17 of the Act of 1913, as amended by the Act of 1923, as to notice. 72 PS §3250—10.

Section 1 of the Act of June 17, 1913, P. L. 507, provided that certain subjects should be taxable for county purposes. This section was amended by section 1 of the Act of April 30, 1929, P. L. 871, by section 1 of the Act of May 2, 1929, P. L. 1509, by section 1 of the Act of April 21, 1933, P. L. 54, and by section 1 of the Act of June 19, 1939, P. L. 413, 72 PS §4821.

On those subjects taxable only for state purposes, the tax is now eight mills. Property subject to tax for county purposes is now also subject to a tax of four mills for state purposes in addition to the tax of four mills for county purposes. The former is commonly called the corporate loans tax, and the latter the state and county personal property tax.

It thus appears that one of the principal reasons for the statutory requirement that, when a corporation becomes liable for tax upon any evidence of indebtedness by it assumed, or on which it shall pay interest, it give notice in writing to any person who may at such time be liable for the payment of any tax under such evidence of indebtedness under the first section of the Act of June 17, 1913, P. L. 507, as amended, and section 3 of the Act of June 22, 1935, P. L. 414, as reenacted and

amended, 72 PS §3244, is to protect the bondholder from the possibility of double taxation.[2]

Under the personal property tax statutes, a bond issued by an individual is subject to personal property tax in the hands of a resident individual holder, and must be returned by him to the county and to the state for personal property tax purposes. Where bonds are issued by a Pennsylvania corporation,[3] or where bonds are originally issued by an individual and assumed by such a corporation, or on which it shall pay interest, such evidences of indebtedness are not subject to the state and county personal property tax, but are subject to the so-called corporate loans tax, which, however, is a tax on the individual bondholder and not on the corporation, but the corporation is the agent of the state in its levy and collection. *Bangor Water Company v. Public Service Commission*, 82 Pa. Superior Ct. 48, 58.

The purpose of the statutory requirement of notice is therefore obvious. When the corporation collects the corporate loans tax on behalf of the Commonwealth, the individual bondholder is no longer required to return such bonds for state and county personal property taxes.

In the present case the bond or bonds were in plaintiff's possession from 1927 to the time of surrender for cancellation, and the notice as indicated was printed on the face of each of the bonds, which he at different times held, stating that payment of interest had been assumed by a corporation, and that no return should be made by the holder for the personal property tax. In addition thereto, plaintiff was aware that each time he presented

---

[2] For review of the history of personal property tax legislation, see *Philadelphia Company for Guaranteeing Mortgages v. Guaranty Realty Co.*, 78 Pa. Superior Ct. 258, affirmed 275 Pa. 18, 118 A. 543; *Estate of Henry Scheutz, Jr., Deceased*, 114 Pa. Superior Ct. 602, 174 A. 832; *Frederick's Estate*, 130 Pa. Superior Ct. 373, 197 A. 642; Id. 333 Pa. 327, 5 A. 2d 91.

[3] See exceptions in section 19 of the Act of June 22, 1935, P. L. 414, as reenacted and amended. 72 PS §3250-10.

his interest coupons for payment the state tax was deducted at the rate fixed by the statute in force at that time. When plaintiff deposited his $1,000 bond with defendant's fiscal agent, the Pennsylvania Company for Insurances on Lives and Granting Annuities, to be marked extended, he received in return $200 in cash, and $800 worth of bonds of the same original issue. On the latter the terms of the extension agreement were stamped, which gave notice that defendant was the corporation which was paying the interest on the bonds. Plaintiff was certainly bound by this notice. Upon payment of the interest coupons thereafter, as theretofore, the state tax was deducted. Plaintiff himself testified that for twelve years he had cashed the interest coupons, and had raised no objection at all to the tax deductions made until the deduction at the time of the last payment of interest upon surrender of his bonds which had been called for redemption.

In our opinion the plaintiff received sufficient notice, as required by the statute, to protect him from the possibility of double taxation. He not only had notice on the first of October of every year, in accordance with the provision of the statutes, but he had continual notice that a corporation had assumed the payment of interest, and that he need not make any return of his bonds for state and county personal property taxes. That, prior to 1933, plaintiff may not have known the name of the corporation which assumed the payment of interest is immaterial. He knew that a corporation had assumed such payment, and he acknowledged that the taxes were deducted without protest or inquiry by him.

There is no merit in plaintiff's contention that defendant was required to give similar notice in writing on or before the first of October of each and every subsequent year during which the corporation was liable for the payment of such interest. It is obvious that it would have been impossible for defendant to have given notice in writing to every bondholder each year, for

the reason that the bonds were payable to bearer, and were not registered. The identity of every individual bondholder was therefore unknown. The legislature did not intend that individual notice be given to each bondholder in October of each year, where the bondholder had continual notice from the bond itself. No particular form of notice is prescribed by statute, and where the purpose of notice has been accomplished, as disclosed by the facts in the instant case, plaintiff has no ground to complain, and recovery was properly denied by the court below.

The cases cited by plaintiff regarding requirements of notice under other statutes are neither similar on their facts nor applicable to the present case.

Judgment is affirmed.